UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-60210-BLOOM/VALLE

MICHELLE PORTER,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

    Defendant.
_____

## **REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE**

THIS MATTER is before the Court on Plaintiff Michelle Porter's Amended Motion for Summary Judgment and Defendant Nancy A. Berryhill's, Acting Commissioner of the Social Security Administration, Amended Motion for Summary Judgment and Response (ECF Nos. 44, 47, 48) (the "Motions"). United States District Judge Beth Bloom has referred the Motions to the undersigned for a Report and Recommendation. *See* (ECF Nos. 30 and 31); *see also* 28 U.S.C. § 636(c).

After due consideration of the record, the Motions, Plaintiff's Reply (ECF No. 58), Defendant's Surreply (ECF No. 59), and the parties' supplemental briefings (ECF Nos. 63, 65, 66, 68, and 69), and having heard oral argument and being otherwise fully advised on the matter, the undersigned recommends that Plaintiff's Motion be **GRANTED**, Defendant's Motion be **DENIED**, and the Administrative Law Judge's ("ALJ's") decision be **REMANDED** for the reasons set forth below.

## I.   PROCEDURAL HISTORY

This suit involves an application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* (the "Act"). Plaintiff alleged a disability onset date of November 12, 2015. (R. 185).[1] Plaintiff's claim was denied initially and again upon reconsideration. (R. 150-53, 158-62). Plaintiff subsequently requested a hearing, which was held before ALJ Sylvia H. Alonso on September 1, 2017. (R. 92-121, 178-79). Plaintiff, appearing with counsel, and a Vocational Expert both testified at the hearing. (R. 92-121).

On October 30, 2017, the ALJ issued a decision (the "Decision") denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Act. (R. 11-27). Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-7); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication. (ECF Nos. 44, 47, 48).

## II.   STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination. *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*,

---

[1] All references are to the record of the administrative proceeding filed as part of the Defendant's Answer. *See* (ECF Nos. 12, 13).

363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (holding that substantial evidence is "more than a scintilla, but less than a preponderance") (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239 (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 351 (11th Cir. 2018). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor*, 786 F.2d at 1053 (citing *Bloodsworth*, 703 F.2d at 1239); *Brightmon,* 743 F. App'x at 351(quoting *MacGregor*, 786 F.2d at 1052).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 423. A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?

3

> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips*, 357 F.3d at 1241 n.10. At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by her impairments. 20 C.F.R. § 404.1545(a). The ALJ will "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). The RFC assessment is used to determine whether the claimant can return to her past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to her past relevant work, then the ALJ proceeds to Step 5. *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v); *Phillips*, 357 F.3d at 1239 (citation omitted). The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.* Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled. *Id.* The ALJ

may determine whether the claimant can adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

### III.   THE RECORD

#### A.  Plaintiff's Testimony and Relevant Background[2]

Plaintiff was 41 years old at the time of the administrative hearing. (R. 96). Plaintiff has a Bachelor of Arts in Criminal Justice. (R. 104). After 20 years of service in the U.S. Army, Plaintiff received a 100% service-connected disability rating by the Department of Veterans Affairs ("VA"), effective July 16, 2015. (R. 56-91, 100). After depleting her accrued leave, Plaintiff was medically discharged in November 2015. (R. 103).

In her application, Plaintiff alleged disability due to post-traumatic stress disorder ("PTSD"), anxiety disorder, major depressive disorder, bilateral flat feet, somatic system disorder, irritable bowel syndrome, diverticulitis, severe migraine headaches, and right and left shoulder rotator cuff tendonitis. (R. 199). Plaintiff testified at the hearing that she also suffered from carpal tunnel syndrome and pain in her knees and spine. (R. 105-11). Plaintiff added that she was involved in a car accident in October 2015 that aggravated these conditions and worsened her pain. (R. 97, 98).

More specifically, Plaintiff testified that her carpal tunnel syndrome makes her hands tingle and go numb. (R. 106-07). Plaintiff wears braces on her hands to alleviate these symptoms.

---

[2] The medical record in this case is voluminous. Very little of this record, however, pertains to the issues raised by the parties on appeal. Thus, although the undersigned has reviewed the record in its entirety, there is no need to repeat Plaintiff's medical history except as relevant to the parties' arguments.

5

(R. 106). Additionally, Plaintiff's knees ache if she sits or stands for too long, and she takes pain medication daily. (R. 105-06). Plaintiff also testified that a partial rotator cuff tear in her left shoulder restricts movement in that shoulder and prevents her from lifting. (R. 108). Plaintiff sees a chiropractor twice a week for spinal adjustments to treat her lower back pain. (R. 108-09, 111). Plaintiff also testified that her diverticulitis causes abdominal pain and her PTSD causes migraines, for which she takes several prescribed medications. (R. 110, 111). Plaintiff estimated that she visited the VA at least five times a month on average for different medical appointments, such as visits to the chiropractor, psychiatrist, the orthopedist, and group therapy sessions. (R. 111).

In terms of work and daily activities, Plaintiff testified that she has not worked since she left the military. (R. 100). Plaintiff has three children still living at home. (R. 97). Since the car accident, Plaintiff is reluctant to drive and her husband does most of the driving for the family, including taking their children to school and doing the grocery shopping. (R. 98-99). Because of her PTSD, Plaintiff prefers to stay at home to avoid situations that might trigger her anxiety, such as noise or large crowds. (R. 109-10).

      **B**.    **Vocational Expert's Testimony**

A Vocational Expert ("VE") testified at the hearing and categorized Plaintiff's past relevant work as a military recruiter (a light, skilled job with an SVP of 5, actually performed by Plaintiff at the sedentary level). (R. 114-15). The ALJ asked the VE whether a hypothetical individual of Plaintiff's age, education, and work experience with the limitations in Plaintiff's RFC could perform Plaintiff's past relevant work. (R. 115). Specifically, the ALJ's hypothetical individual: (i) must avoid concentrated exposure to humidity, noise, vibration, fumes, odors, dust, and gases; (ii) could understand, remember, and carry out simple instructions; (iii) could concentrate and perform simple and routine tasks at a consistent, but not production, rate; (iv) could tolerate

occasional interaction with supervisors, coworkers, and the public; and (v) could tolerate gradual changes to the work routine.³ *Id.* The VE testified that such an individual could not perform Plaintiff's past relevant work as a recruiter. *Id.*

Next, the ALJ asked the VE whether there were other jobs in the national economy that a hypothetical individual with Plaintiff's RFC could perform. *Id*. The VE testified that such an individual could work as an assembler, labeler, and merchandise marker (all light, unskilled jobs with an SVP of 2). (R. 115-16). In response to the ALJ, the VE further testified that there were no conflicts, apparent or otherwise, between the Plaintiff's RFC and the DOT requirements for the assembler, labeler, and merchandise marker jobs.⁴ (R. 116).

Thereafter, Plaintiff's counsel asked the VE whether the hypothetical individual could perform any other jobs in the national economy if she were further limited to only occasional kneeling, bending, crawling, crouching, stooping, and reaching with the left arm. (R. 117). In response, the VE testified that the additional limitation to only occasional reaching in any direction would preclude all jobs. (R. 117-18). The VE stated, however, that if the hypothetical individual were restricted to only occasional overhead reaching, but could still perform frequent lateral reaching, then that individual could still work as an assembler, labeler, and merchandise marker. (R. 118). The VE also concluded, however, that someone with the additional limitations posed by Plaintiff's counsel could nonetheless work as an usher or ticket taker, both of which require only brief interactions with the public. (R. 119-20).

---

³ Plaintiff does not challenge the ALJ's RFC determination.

⁴ "DOT" refers to the *Dictionary of Occupational Titles*, published by the Department of Labor.

7

## IV.  THE ALJ'S DECISION

On October 30, 2017, after reviewing the evidence and conducting the requisite five-step analysis, the ALJ concluded that Plaintiff was not disabled under the Act. (R. 14, 23).

At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since November 12, 2015, the alleged onset date. (R. 16).

At Step 2, the ALJ found that Plaintiff's degenerative disc disease, partial tear of the left shoulder, migraine headaches, PTSD, adjustment disorder with anxious and depressed moods, and allergic rhinitis were severe impairments. *Id.* Conversely, the ALJ concluded that Plaintiff's carpal tunnel syndrome, hepatitis B, and diverticulitis were not severe impairments. (R. 16, 17).

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings. (R. 17-19).

At Step 4, the ALJ determined that Plaintiff had the RFC to perform light work, but must avoid concentrated exposure to humidity, noise, vibration, fumes, odors, dust and gases. (R. 19). The ALJ found that Plaintiff could: (i) understand, remember and carry out simple instructions; (ii) perform simple, routine tasks at a persistent, but not production rate; (iii) interact with supervisors, coworkers, and the public occasionally; and (iv) tolerate gradual changes in her routine work environment. *Id.* Ultimately, the ALJ found that Plaintiff could not perform her past relevant work as a military recruiter. (R. 22).

At Step 5, based on the testimony of the VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform other jobs in the national economy, such as assembler, labeler, and merchandise marker (all unskilled, light jobs with an SVP of 2). (R. 22-23).

## V. DISCUSSION

Plaintiff's Motion raises two issues: (i) whether the ALJ erred in assigning "little weight" to the VA's disability determination; and (ii) whether the ALJ erred at Step 5 in failing to address an apparent conflict between Plaintiff's RFC and the VE's testimony with the DOT requirements for the jobs of assembler, labeler, and merchandise marker. *See generally* (ECF No. 44). For the reasons discussed below, the undersigned recommends that the ALJ's Decision be reversed and remanded for more explicit consideration of these issues.

### A. The ALJ Failed to Adequately Consider the VA's Disability Determination

*1. Applicable Law*

In July 2015, prior to Plaintiff filing for DIB benefits, the VA rated Plaintiff 100% disabled due to service-connected impairments. (R. 56-91). Social Security regulations in effect when Plaintiff applied for DIB benefits provided that disability decisions made by other governmental or nongovernmental agencies, although not binding on the Social Security Administration ("SSA"), was evidence to be considered in the Social Security determination. *See* 20 C.F.R. §§ 404.1512(b)(1)(v), 404.1504 (2016). Furthermore, Social Security Ruling ("SSR") 06-03p[5] provided that in determining social security eligibility, " . . . [the SSA is] required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, including decisions by other governmental and nongovernmental agencies. Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be

---

[5] SSR 06-03p was rescinded for claims filed on or after March 27, 2017. The new regulations clarify that an ALJ is not required to articulate any analysis of a disability decision made by another governmental agency, including the VA, made under that agency's own rules. *See* 20 C.F.R. § 404.1504. Here, the parties agree that Plaintiff's claim is governed by the prior legal standard.

ignored and must be considered." SSR 06-3p, 2016 WL 2329939, at *7 (Aug. 9, 2006) (citations omitted).

Similarly, the Eleventh Circuit has held that a disability determination from another governmental agency, although not binding on the Commissioner, is entitled to great weight and should be considered. *See Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (citing *Bloodsworth*, 703 F.2d at 1241) (finding that the ALJ erred in not giving great weight to a Florida agency's finding of temporary disability); *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984) ("Although the V.A.'s disability rating is not binding on the Secretary of Health and Human Services, it is evidence that should be given great weight.") (citing *Olson v. Schweiker*, 663 F.2d 593, 597 n.4 (5th Cir. Dec. 1981)); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. Unit A Mar. 1981) (noting that although "VA Rating is certainly not binding on the Secretary, . . . it is evidence that should be considered and is entitled to great weight.").[6] More recently, albeit in an unpublished opinion, the Eleventh Circuit held that VA disability determinations must be "seriously consider[ed] and closely scrutinize[d]," and that an ALJ must "give specific reasons if the ALJ discounts that determination." *Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x. 902, 904 (11th Cir. 2016).

In *Brown-Gaudet-Evans*, the ALJ had given the VA's 100% disability rating "little weight," explaining his decision as follows: "The undersigned has considered this [VA] opinion, noting that such program has different criteria for deciding whether an individual is 'disabled' or 'unemployable,' and, therefore, gives this opinion little weight." 673 F. App'x at 904 (alteration

---

[6] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit issued prior to the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

in original). In reversing the ALJ's decision, the Eleventh Circuit reiterated its long-standing precedent that "[a]lthough the V.A.'s disability rating is not binding on the [SSA], it is evidence that should be given great weight." *Brown-Gaudet-Evans*, 673 F. App'x at 904 (quoting *Brady*, 724 F.2d at 921). The Court noted that although "[i]t is not disputed that the VA's 'disability' determination relies on different criteria than the SSA's determination," that does not mean that "the ALJ can summarily ignore the VA's determination nor give it 'little weight.'" *Id.* On remand, the Court directed the ALJ "to seriously consider and closely scrutinize the VA's disability determination and [to] give specific reasons if the ALJ discounts that determination." *Id.*

2. *The ALJ Failed to Appropriately Address the VA's Disability Determination*

Here, in assigning "little weight" to the VA's disability rating, the ALJ wrote:

> The Department of Veterans Affairs (VA) assessed the claimant with a 100% service connected disability due to foot, spine, gastrointestinal and mental impairments. The undersigned affords this opinion little weight. The VA uses different criteria in analyzing disability that is not applicable to the sequential evaluation process required for Social Security disability determinations. The evidence from which the VA derived their opinion has been considered in the current analysis as detailed above.

(R. 21) (citation omitted).

As in *Brown-Gaudet-Evans*, the ALJ here discounted the VA's disability determination on the grounds that the VA uses "different criteria in analyzing disability that is not applicable to the sequential evaluation process required for Social Security disability determinations." (R. 21). This is an insufficient reason to discount the VA's determination. *See Hilderbrandt v. Berryhill*, No. 5-17-CV-35-Oc-DNF, 2018 WL 992824, at *6 (M.D. Fla. Feb. 21, 2018) ("The fact that the two agencies utilize different determination processes does not constitute good cause for rejecting evidence that is entitled to great weight."). Moreover, the ALJ's Decision is not saved by the ALJ's one-line statement that "[t]he evidence from which the VA derived their opinion has been considered in the current analysis as detailed above." (R. 21). Despite this general

11

pronouncement, the ALJ's Decision fails to explain how or why the evidence underlying the VA's determination should be given little weight in the Social Security context.[7] Although reasons may exist to reject the VA's disability rating, the undersigned cannot affirm "simply because some rationale might have supported the ALJ's conclusion." *Burch-Mack v. Comm'r Soc. Sec.*, No. 8:15-CV-1167-T-JSS, 2016 WL 4087477, at *5 (M.D. Fla. Aug. 2, 2016).

Against this legal and factual backdrop, the undersigned finds that the ALJ inadequately considered the VA's disability rating. The ALJ did not give the rating "great weight" and failed to sufficiently explain her reasons why. *See Brady,* 724 F.2d at 921; *Brown-Gaudet-Evans,* 673 F. App'x. 904. To be clear, on remand, the ALJ is not required to give the VA's disability determination controlling weight. *Brown-Gaudet-Evans,* 673 F.2d at 904. Rather, the ALJ must "seriously consider and closely scrutinize" the VA's disability determination and "give specific reasons" if she discounts that determination. *Id.* Moreover, a VA rating of 100% disability, such as here, merits even closer scrutiny. *Rodriguez*, 640 F.2d at 686.

### B. The ALJ Failed to Address an Apparent Conflict at Step 5

*1. Applicable Law*

In SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), the SSA made clear that an ALJ must resolve conflicts between the VE testimony and DOT data. In relevant part, SSR 00-4p provides:

---

[7] Although the ALJ references VA records in Exhibits 5F and 8F, *see* (R. 17, 20), the ALJ failed to conduct a meaningful review of these records or address the merits of the VA's disability determination. For example, the ALJ cites to Exhibit 8F briefly to show that Plaintiff had mild carpal tunnel syndrome and that her hepatitis B did not affect her ability to work. (R. 17). The ALJ refers to Exhibit 5F to show that: (i) Plaintiff had positive carpal compression but full range of both hands and all fingers; (ii) Plaintiff complained of increasing shoulder pain associated with a tear discovered by magnetic resonance imaging; (iii) Plaintiff participated in physical therapy for her shoulder pain, but refused surgery; and (iv) Plaintiff had mild spinal abnormalities. (R. 17, 20). These few points, without more, cannot be read to constitute "specific reasons" for discounting the VA's determination.

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

2000 WL 1898704, at *2.

In 2018, the Eleventh Circuit expanded on SSR 00-4p. *See Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353 (11th Cir. 2018). In *Washington,* the Court held that an ALJ has an affirmative duty under SSR 00-04p "to identify, explain, and resolve" apparent conflicts between DOT data and VE testimony. *Id*. at 1356. It noted that the ALJ's "duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT." *Id.* at 1362. Rather, "if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion." *Id*. at 1366.

### 2.  *The ALJ Failed to Address an Apparent VE/DOT Conflict*

Plaintiff argues that the ALJ erred in failing to identify and resolve an apparent conflict between Plaintiff's RFC and the VE's testimony on the one hand, and the DOT requirements for the assembler, labeler, and merchandise marker job, on the other hand. (ECF No. 44 at 6-7, 24-36). More specifically, the ALJ limited Plaintiff to understanding, remembering and carrying out simple instructions, which Plaintiff contends usually corresponds to a Reasoning Skill Level ("RSL") of 1. However, the three jobs identified by the VE at Step 5 correspond to an RSL of 2.

13

Pursuant to the DOT, an RSL of 1 requires application of "commonsense understanding to carry out *simple one- or two-step instructions*" and the ability to "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, App'x C, 1991 WL 688702 (4th ed. rev'd 1991) (emphasis added). An RSL of 2, however, requires the application of "commonsense understanding to carry out *detailed but uninvolved* written or oral instructions" and the ability to "[d]eal with problems involving few concrete variables." *Id.* (emphasis added); *see also* DOT 723.684-018, 1991 WL 679521 (2016) (assembler); 920.687-126, 1991 WL 687992 (2016) (labeler); and 209.587-034, 1991 WL 671802 (2016) (merchandise marker). Despite the difference in language between RSL 1 and 2, Defendant contends that there is no conflict, apparent or otherwise, between Plaintiff's RFC/VE testimony and the DOT. (ECF No. 47 at 12-13); *see also* Transcript of July 10, 2019 Hearing (ECF No. 62 at 38:5-9, 16-19 ("It's our position that . . . there was no apparent conflict . . . .")). Plaintiff, however, argues that a restriction to "simple instructions" poses at least an apparent conflict with jobs that require an ability to carry out "detailed but uninvolved" instructions. The undersigned agrees with Plaintiff and finds that there is an apparent conflict that must resolved by the ALJ.

An "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE. It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Washington*, 906 F.3d at 1365. At a minimum, a conflict is apparent if a "reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.* Here, a reasonable comparison of the DOT requirements for the identified jobs against Plaintiff's RFC suggests an inconsistency in that an individual who can understand, remember, and carry out only simple instructions may not necessarily be able to carry out detailed instructions, even if they are

14

uninvolved. *See Howard v. Comm'r Soc. Sec.*, No. 8:18-CV-2004-T-PDB, 2019 WL 4738137, at *2 (M.D. Fla. Sept. 27, 2019) (remanding for ALJ to explain and resolve apparent conflict between RSLs 1 and 2).

To support its argument that individuals restricted to "simple" instructions may nonetheless perform jobs at an RSL of 2, Defendant relies on *Ranstrom v. Colvin*, 622 Fed. App'x. 687 (9th Cir. 2015), and *Moore v. Astrue*, 623 F.3d 599 (8th Cir. 2010), among others. *See* (ECF No. 47 at 13, 14 at n.6). But, in addition to being non-binding cases from other circuits, these cases predate the Eleventh Circuit's mandate in *Washington*. Significantly, the Eleventh Circuit cases Defendant cites also pre-date the court's ruling in *Washington*, and thus provide little support for Defendant's position. Defendants' other supporting case law is similarly inapposite. *See* (ECF No. 47 at 13-14) (citing to *Williams v. Colvin*, No. 15-61274-CIV, 2016 WL 4920997, at *12 (S.D. Fla. Mar. 7, 2016); *Komocsin v. Colvin*, No. 15-60744, 2016 WL 4801352, at * 12 (S.D. Fla. Feb. 22, 2016); *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 872-73 (11th Cir. 2016); *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795-96 (11th Cir. 2011); *see also* (ECF No. 65) (citing *de Acosta v. Berryhill*, No. 16-81862-CIV-WM, 2018 WL 1472476, at *19 (S.D. Fla. Mar. 26, 2018); *Sugarman v. Berryhill*, No. 15-CIV-20332, 2017 WL 4868809, at *6 (S.D. Fla. Oct. 27, 2017); *Vazquez v. Colvin*, No. 12-23468-CIV, 2015 WL 1395238, at *7 (S.D. Fla. Mar. 25, 2015); *Menendez v. Colvin*, No. 12-21505-CIV, 2015 WL 1311460, at *3 (S.D. Fla. Mar. 23, 2015); *Hurtado v. Astrue*, No. 09-60930-CIV, 2010 WL 1850261, at *11 (S.D. Fla. Apr. 14, 2010). These cases focused on whether a conflict existed between jobs with an RSL of 2 or 3 and a claimant's restriction to simple *tasks*, not simple *instructions*. But recently, a district judge found that such a conflict nonetheless required remand. *See Liao v. Berryhill,* No. 17-24629*,* 2019 WL 2254961 (S.D. Fla. Feb. 28, 2019) (J. Cooke). Moreover, in *Chambers* and *Hurtado v. Astrue,* the courts

15

relied on their own *post hoc* evaluations of the jobs identified by the VE to find no conflict with the claimants' skills. This *post hoc* evaluation is now impermissible under *Washington.*

For these reasons, the undersigned finds Defendant's cases unpersuasive and concludes that the ALJ did not adequately identify, explain, and resolve the apparent conflict between Plaintiff's RFC and the DOT. In reaching this conclusion, the undersigned echoes Judge Cooke's reasoning in *Liao v. Berryhill,* where she states:

> The regulations impose on ALJs a duty "to identify and resolve apparent conflicts between DOT data and VE testimony." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). "A conflict is apparent if it seems[s] real or true, but not necessarily so to an ALJ with ready access to and close familiarity with the DOT." *Saffioti v. Comm'r of Soc. Sec.,* No. 2:1-CV-143-FTM-99CM, 2019 WL 298473, at *8 (M.D. Fla. Jan. 7, 2019), *report and recommendation adopted*, No. 2:17-CV-143-FTM-99CM, 2019 WL 293324 (M.D. Fla. Jan. 23, 2019). Resolving this conflict goes beyond "taking the VE at his word that his testimony comports with the DOT." *Id.* Rather, if the VE's testimony conflicts with the DOT, an ALJ must "undertake a meaningful investigatory effort to uncover apparent conflicts." *Id.* at 1364. And failure to do so, "means the ALJ's decision, when based on the contradicted VE testimony, is not supported by substantial evidence." *Id*. at 1356.

2019 WL 2254961, at * 1.

In sum, it is not for the undersigned to make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ. *Winschel,* 631 F.3d at 1178. Rather, the undersigned's review of the ALJ's Decision is limited to determining whether the ALJ's findings are based on correct legal standards and are supported by substantial evidence. Here, as in *Liao*, the VE's testimony potentially conflicted with the DOT, and the ALJ did not identify or resolve the conflict. Accordingly, the ALJ's Decision is not supported by substantial evidence.

## VI.   RECOMMENDATION

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that Plaintiff's Amended Motion for Summary Judgment (ECF No. 44) be **GRANTED**, Defendant's

Amended Motion for Summary Judgment (ECF No. 47) be **DENIED**, and the ALJ's Decision be **REVERSED AND REMANDED**.

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to any of the above findings and recommendations as provided by the Local Rules for this district. 28 U.S.C. § 636(b)(1); S.D. Fla. Mag. R. 4(b). The parties are hereby notified that a failure to timely object waives the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2019); *see Thomas v. Arn*, 474 U.S. 140 (1985).

**DONE AND ORDERED** at Chambers in Fort Lauderdale, Florida on January 13, 2020.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
U.S. District Judge Beth Bloom
All Counsel of Record